[Cite as *In re N.E.*, 2016-Ohio-5201.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| N.E. (DOB: 8/21/09) | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | |
| | : | |
| | : | |
| | : | Case No. 2016CA00054 |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                                     Pleas, Family Court Division, Case
                                                     No. 2015JCV00316


JUDGMENT:                                      Affirmed


DATE OF JUDGMENT:                       August 1, 2016


APPEARANCES:

For Appellant                                     For Appellee

DAVID L. SMITH                                JAMES B. PHILLIPS
P.O. Box 20407                                 300 Market Avenue North
Canton, OH  44701                            Canton, OH  44708

*Farmer, P.J.*

{¶1}   On April 3, 2015, appellee, Stark County Department of Job and Family Services, filed a complaint alleging N.E., born August 21, 2009, to be a neglected and/or dependent child.  Father of the child is appellant, Ronald Eick, Jr.; mother is Jessica Waggoner.[1]

{¶2}   Following a shelter care hearing, the child was placed in appellee's emergency temporary custody.

{¶3}   An adjudicatory hearing was held on April 29, 2015, wherein both parents stipulated to dependency.  The dispositional hearing followed and the trial court placed the child in appellee's temporary custody and a case plan was approved and adopted.

{¶4}   On January 11, 2016, appellee filed a motion for permanent custody.  A hearing was held on February 24, 2016.  Neither parent attended.  By nunc pro tunc judgment entry filed February 29, 2016, the trial court terminated parental rights, and granted appellee permanent custody of the child.  Nunc pro tunc findings of fact and conclusions of law were filed contemporaneously with the judgment entry.

{¶5}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶6}   "THE TRIAL COURT'S JUDGMENT THAT THE MINOR CHILD CANNOT AND SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

---

[1]Mother, as well as another child born March 14, 2013, were included in the underlying hearings, but are not a part of this appeal.

II

{¶7}   "THE TRIAL COURT'S JUDGMENT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I, II

{¶8}   Appellant claims the trial court's decision to grant permanent custody of the child to appellee was against the manifest weight and sufficiency of the evidence. Appellant claims the trial court erred in finding the child could not be placed with him within a reasonable period of time and the best interest of the child was best served by granting appellee permanent custody.  Appellant claims given his cognitive skills and abilities, he should have been afforded more than one year to complete his case plan, and an extension of time would have facilitated a stronger bond with the child.  We disagree.

{¶9}   As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses.  Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA-5758, 1982 WL 2911 (February 10, 1982).  Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.  *C.E. Morris Co. v. Foley Construction,* 54 Ohio St.2d 279 (1978).  On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and

determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins,* 78 Ohio St.3d 380, 1997-Ohio-52; *Eastley v. Volkman,* 132 Ohio St .3d 328, 2012-Ohio-2179. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21.

{¶10} R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part the following:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the

agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(16) Any other factor the court considers relevant.

{¶11} R.C. 2151.414(B)(1) specifically states permanent custody may be granted if the trial court determines, by clear and convincing evidence, that it is in the best interest of the child and:

(a) The child is not abandoned or orphaned***and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period***.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶12} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus. See also, *In re Adoption of Holcomb,* 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶13} R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interest of a child:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.


{¶14} Wanda Pounds, the ongoing case worker assigned to the case, was the sole witness at the permanent custody hearing. Although appellant was represented by

counsel at the hearing, he did not appear.  In its nunc pro tunc findings of fact and conclusions of law filed February 29, 2016, the trial court found the following relative to appellant:

12. Ms. Pounds testified that Father was given a case plan to complete.  Father was to complete a parenting assessment at Northeast Ohio Behavioral Health and follow all recommendations, complete a Quest assessment, submit to random drug testing, complete Goodwill Parenting after achieving sobriety, and engage in individual and joint therapy.

13. Ms. Pounds testified that Father is low functioning.

14. Ms. Pounds testified that Father was terminated from Quest for failure to attend.  Ms. Pounds testified that Father failed drug screens on December 7, 2015 and January 16, 2016, testing positive for marijuana and methamphetamines.

15. Ms. Pounds testified that Father failed to engage in counseling.

16. Ms. Pounds testified that Father could not initiate Goodwill Parenting because he did not achieve sobriety.

17. Ms. Pounds testified that Father's visits were sporadic.

18. Ms. Pounds testified that Father lacks stable housing and financial stability.

19. Ms. Pounds testified that Father cannot provide a safe home and has not reduced the risk to the child.

{¶15} The trial court concluded relative to appellant:

3. THEREFORE, the Court finds by clear and convincing evidence that Mother and Father have not reduced the risk of harm to the child and cannot safely parent the child.

4. THEREFORE, the Court finds by clear and convincing evidence that the Agency made reasonable efforts to prevent the need for placement and/or make it possible for the child to return home notwithstanding the child cannot be placed with either within a reasonable time or should not be placed with either parent.

{¶16} Ms. Pounds testified appellant was low functioning and his cognitive ability was an issue. T. at 10. His IQ is "in the low eighties." T. at 13. The case plan required appellant to obtain a parenting assessment from Northeast Ohio Behavioral Health, participate in Quest, provide random drug screens, complete Goodwill Parenting, and participate in individual therapy and possibly joint therapy with the child. T. at 10.

{¶17} Appellant obtained his parenting assessment. *Id.* He attended Quest, but did not complete it due to lack of attendance. T. at 10-11. He submitted drug screens and tested positive for amphetamine, methamphetamine, and marijuana. T. at 11. Appellant did not attend Goodwill Parenting because of his "inability to successfully complete Quest and to provide clean drug screens." *Id.* He never initiated counseling services. *Id.* As far as stability and housing, appellee had three different addresses for appellant in the past ten months, and "each address was the housing of someone else

who was letting him stay with them. Um and each time he had to be asked to leave their home." *Id.* At the time of the hearing, his whereabouts were unknown, possibly Springfield, a suburb of Dayton. T. at 15. Appellant did not have a job, and his source of income was applying for social security and "he's also working under the table." T. at 12. His visitations with the child were "pretty sporadic." *Id.* Out of twenty scheduled visits, be made about six. *Id.*

{¶18} Ms. Pound opined more time would not be helpful, explaining the following (T. at 13):

> Well Father was a part of this case at the very beginning when it was a non-court case and nothing was accomplished. Um we're going on a year of court case. Again um the most basic thing that I needed him to do Quest which is the key to everything else he wouldn't even show up for the appointments. He doesn't show up for visits with his kids. Um I truly don't think any more time is going to make any difference except for him to show his children he's not committed to them.

{¶19} We find the trial court's conclusions are supported by the record. There is nothing in the record to prove that any further time to develop the case plan would be effective.

{¶20} As for best interests, Ms. Pounds testified to a minimal bond between appellant and the child. T. at 19. The child was currently in foster care and her mental health was improving with therapy. T. at 17-18, 20. The child was starting to thrive with

more stabi and less chaos in her life.  T. at 21.  The current foster care home did not wish to adopt, but another home had expressed interest in adopting the child which appellee was pursuing.  T. at 18.  Ms. Pound opined the benefit of permanent custody would outweigh any harm caused by breaking the bond with appellant.  T. at 19.

{¶21}  Upon review, we find sufficient clear and convincing evidence to support the trial court's decision on best interest and the granting of permanent custody of the child to appellee.

{¶22}  Assignments of Error I and II are denied.

{¶23}  The judgment of the Court of Common Pleas of Stark County, Ohio, Family Court Division is hereby affirmed.

By Farmer, P. J.

Gwin, J. and

Delaney, J. concur.

SGF/sg 717